IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALICIA BULLOCK                          :
                                        :       CIVIL ACTION
                    v.                  :
                                        :       NO. 19-1183
CITY OF PHILADELPHIA                    :

**MEMORANDUM**

**SURRICK, J.**                                         **JULY 30, 2020**

Presently before the Court in this employment discrimination matter is Defendant's

Motion to Dismiss Plaintiff's Amended Complaint.  (ECF No. 10.)  For the following reasons,

Defendant's motion will be granted in part and denied in part.

# I.      BACKGROUND

## A.      Procedural History

On March 20, 2019, Plaintiff Alicia Bullock filed a Complaint against the Defendant,

City of Philadelphia.  (ECF No. 1.)  On July 2, 2019, Plaintiff filed an Amended Complaint.

(ECF No. 8.)  On July 22, 2019, Defendant filed a motion to dismiss the Amended Complaint.

(ECF No. 10).  Plaintiff filed a response in opposition on August 5, 2019.  (ECF No. 12.)

## B.      Plaintiff's Allegations

The Amended Complaint consists of seven counts against Defendant:  (Count I) race

discrimination, in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*; (Count II) hostile work

environment, in violation of Title VII; (Count III) retaliation, in violation of Title VII; (Count

IV) discrimination by a municipal entity, in violation of 42 U.S.C. §§ 1981 and 1983; (Count V)

wrongful termination, in violation of public policy; (Count VI) violation of the Pennsylvania

Human Rights Act (PHRA), 43 P.S. § 951 *et seq.*; and (Count VII) violation of the Philadelphia

Fair Practices Ordinance (PFPO), Philadelphia Code § 9-1101.  In support of these claims, Plaintiff alleges the following:

Plaintiff is an African American woman.  In April 2016, Defendant hired Plaintiff as a wireless communications analyst to work in its Office of Innovation and Technology ("OIT"). Plaintiff was assigned to the Philadelphia International Airport.  As a wireless communications analyst, Plaintiff was responsible for issuing, managing, and troubleshooting wireless phones and other wireless communications devices at the airport.  (Am. Compl. ¶¶ 9-11, ECF No. 8.)

During her employment with OIT, Plaintiff witnessed discrimination against African Americans and was herself often the subject of racial slurs.  One male coworker in particular had a reputation for making racist comments and harassing female employees.  OIT knew about this individual's mistreatment of African Americans and women and transferred him to a different department on one occasion because of his actions towards female employees.  (*Id.* ¶¶ 13-17.) On multiple occasions, the male coworker made disparaging remarks to Plaintiff.  On one such occasion, he asked her where her "master" was.  Plaintiff told him that she was offended and reported the issue to her supervisor.  The supervisor sent an email to the OIT staff addressing the inappropriate use of stereotypes, but neither the supervisor nor anyone else at OIT penalized the male coworker for his comment.  On a second occasion, the male coworker made a similar "master" remark to Plaintiff.  OIT sent another general email to the staff about stereotypes, but it did not otherwise hold the male coworker accountable for his remark.  The coworker continued making racial slurs to Plaintiff, including asking Plaintiff if she ate her fried chicken with honey. (*Id.* ¶¶ 18-24.)

OIT also ignored other racist activities in the workplace.  For example, Plaintiff's supervisor referred to African Americans as "those people."  (*Id.* ¶¶ 25-26.)  On another

occasion, Plaintiff notified her supervisor that certain custodial employees needed work phones. The supervisor promptly provided non-minority employees with phones, but the supervisor refused to provide minority employees with phones.  The custodial department consisted largely of African Americans and other minorities.  (*Id*. ¶¶ 28-30.)

During her employment with OIT, Plaintiff found several instances of wasteful spending, including Defendant's payment for phone lines assigned to retired or deceased workers and payments on maintenance plans for wireless devices that were missing.  In 2017, Plaintiff advised Defendant's human resources department, OIT's human resources department, and Defendant's chief information officer about the wasted funds.  In February 2018, she also reported the waste to Defendant's Office of Inspector General.  In March 2018, Plaintiff emailed the chief information officer to make additional complaints about certain inefficiencies regarding management of wireless devices.  (*Id*. ¶¶ 31-39.)

On April 4, 2018, Plaintiff filed a discrimination complaint with the EEOC.  Shortly thereafter, she told her supervisor and a human resources staff member that she had filed the complaint.  On April 27, 2018, a Friday, Plaintiff called out sick and timely notified her supervisor.  When she returned to work on the following Monday, her office door was locked and she could not enter the office.  Plaintiff waited three hours for her supervisor to arrive, and when he did, he told Plaintiff that she was fired as of April 27, 2018.  Defendant subsequently issued a termination letter dated April 27, 2018.  The letter stated that Plaintiff had been terminated because she "failed to perform tasks, properly use leave, and work collaboratively with the Airport team."  (*Id*. ¶¶ 40-46.)

## II.      DISCUSSION

In its Motion, Defendant asserts that:  (1) Plaintiff has failed to allege any facts giving rise to an inference of discrimination; (2) the facts alleged do not establish a hostile work environment; and (3) Plaintiff has failed to allege a causal relationship between reporting her concerns about racism and her termination.  We agree that the Amended Complaint fails to allege a hostile work environment.  However, we are satisfied that the allegations are sufficient to support a finding of causation, as well as claims for discrimination and retaliation.

### A.      Standard of Review

Defendant moves to dismiss the Amended Complaint under Rule 12(b)(6), for failure to state a claim.  On a Rule 12(b)(6) motion, "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cnty. Of Allegheny*, 515 F.3d 223, 233 (3d Cir. 2008)).  Courts are "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  "In order to defeat a Rule 12(b)(6) motion, plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level….'"  *Eid*, 740 F.3d at 122 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss'" under Rule 12(b)(6).  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"[A] complaint need not establish a *prima facie* case in order to survive a motion to dismiss."  *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 788 (3d Cir. 2016).  "A *prima facie* case is 'an evidentiary standard, not a pleading requirement.'"  *Id*. at 789 (quoting *Swierkiewicz v.*

*Sorema, NA.,* 534 U.S. 506, 510 (2002)). "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Id*. (quoting *Phillips,* 515 F.3d at 234).

### B.    Plaintiff States a Claim for Race Discrimination under Title VII

"In order to state a viable Title VII claim, a plaintiff must show that she (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Twillie v. Erie Sch. Dist.*, No. 11-165, 2013 WL 4666072, at *4 (W.D. Pa. Aug. 30, 2013) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)), *aff'd*, 575 F. App'x 28 (3d Cir. 2014).

Defendant's only argument on this claim is that Plaintiff failed to allege facts sufficient to satisfy the fourth element.  In support of its argument, Defendant contends that Plaintiff failed to offer "comparators or other evidence that she was treated differently from employees of a different race."  (Def. Br. 6, ECF No. 10.)  However, on a motion to dismiss, a plaintiff is "not required to plead comparator evidence to support an inference of discrimination.  Such an inference could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus."  *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (citing *Swierkiewicz*, 534 U.S. at 510).

Here, Plaintiff offers several specific examples of discriminatory statements or actions by her supervisor and OIT as a whole. These include her supervisor and OIT's failure to hold

Plaintiff's male coworker accountable for racially charged statements, even after that coworker made those statements—and Plaintiff reported them—more than once.  Plaintiff's supervisor also allegedly referred to African Americans as "those people."  In addition, the supervisor allegedly refused to provide minority custodial staff, including African Americans, with work phones, but immediately provided non-minorities in the same department with work phones.  "'While any one of these allegations, taken alone, may not be sufficient to support an inference of discrimination, when taken together, and viewed in the light most favorable to [Plaintiff], they are sufficient to support such an inference at this motion-to-dismiss stage.'"  *Bellamy v. Waterfront Square Condos.*, No. 12-6618, 2013 WL 607848, at *3 (E.D. Pa. Feb. 19, 2013) (quoting *Dantzler-Hoggard v. Graystone Academy Charter Sch.*, No. 12-0536, 2012 WL 2054779, at *8 (E.D. Pa. June 6, 2012)).  Accordingly, Defendant's motion with respect to the race discrimination claim will be denied.

### C.    Plaintiff Fails to State a Hostile Work Environment Claim

To state a plausible hostile work environment claim under Title VII, a plaintiff must establish the following elements: "(1) the employee suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of responsibility on the part of the employer."  *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014) (citing *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

According to Defendant, Plaintiff fails to plead severe or pervasive discrimination.  In support of this argument, Defendant notes that Plaintiff was able to report her concerns and, when she did, her concerns were addressed.  The "severe or pervasive" prong of a hostile work

environment claim "is analyzed under the totality of the circumstances, which should include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Felder*, 303 F.R.D. at 244 (quoting *Mandel*, 706 F.3d at 168); *see also Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to' a hostile work environment." *Rorke v. Toyota*, 399 F. Supp. 3d 258, 278-79 (M.D. Pa. 2019) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998)).

The *Felder* case is an example of a case in which a hostile work environment was apparent on the pleadings.  In *Felder*, an African American employee alleged that a coworker "harassed him continuously throughout his approximately six months of employment because of his race."  *Id*. at 242.  Because of the coworker's "racial tirades in the lunch room, [the plaintiff] was forced to stop eating there, and went so far as to bring in his own refrigerator and microwave to avoid the situation."  *Id*. at 244.  The plaintiff also alleged that the coworker sought him out several times a week for five months to intimidate him, and that the plaintiff started attending a bible study to cope.  On one occasion, the coworker also "kicked the boxes [the plaintiff] was working on and shoulder-checked him, spinning him around."  *Id*. at 242-44; *see also Rorke*, 399 F. Supp. 3d at 279 (hostile work environment claim survived summary judgment where general manager frequently called employees derogatory names and made sexual innuendos in front of other employees, including "crazy bitch," "dumb bitch," "Toots," "hooker," "Pop Tart," "dickhead," "grow a set of balls," and asking a male employee about his sex life, among other, even worse things).

7

The comments allegedly made by Plaintiff's coworker and supervisor were inappropriate, but we are not satisfied that they establish the severity element of a hostile work environment claim. Plaintiff alleges additional "routine" discrimination against African Americans (Am. Compl. ¶ 13) and makes other nonspecific allegations about ongoing "racist treatment in the workplace." (*See*, *e.g.*, *id*. ¶¶ 14, 25.) However, these assertions are not supported by any facts, other than those regarding the coworker and supervisor. Furthermore, unlike in *Felder*, there is no indication that Plaintiff was physically threatened or unable to complete her work as a result of the alleged misconduct. Considering the totality of the circumstances, Plaintiff's allegations fail to show severe or pervasive discrimination. Therefore, her hostile work environment claim must be dismissed. This claim will be dismissed without prejudice. Plaintiff will be given the additional opportunity to amend.

### D.      Plaintiff States a Claim for Retaliation

A Title VII retaliation claim survives a motion to dismiss if the plaintiff "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements:  (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789. Defendant asserts that Plaintiff failed to allege the causal element of this claim, particularly because she does not establish a temporal nexus between her protected activities—i.e., reporting instances of racism and filing a complaint with the EEOC—and her termination. We disagree.

When assessing causation, courts must be "mindful of the procedural posture of the case." *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). For example, there is a "difference between a plaintiff relying upon temporal proximity to satisfy her prima

facie case for the purpose of summary judgment, and to reverse a verdict." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000) (internal citation omitted). It logically follows that courts should view claims based on temporal proximity less skeptically on a motion to dismiss, where a plaintiff "need not establish a *prima facie* case" to succeed. *See Connelly*, 809 F.3d at 788.

"In certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra*, 497 F.3d at 302  (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *see also Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) ("[W]hen only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn"). "Conversely, however, '[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra*, 497 F.3d at 302 (quoting *Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993)). "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

In *Kachmar*, the district court determined on a motion to dismiss that the plaintiff failed to establish causation because "there was too great a gap between [her] protected acts and her termination." *See id.* at 178. The Third Circuit reversed, finding that "the district court failed to give [the plaintiff] the opportunity to delve further into the facts by discovery." *Id.* In so doing,

the Third Circuit acknowledged that there are cases in which a temporal gap has precluded a finding of causation, but those "cases arose following a greater opportunity for factual exploration" than when a court dismisses a claim "on the basis of the complaint alone." *Id*.

Plaintiff's failure to allege the specific dates on which she reported racist activities in the workplace does give the Court pause. However, Plaintiff alleges facts showing that she was terminated less than a month after she informed her employer about the EEOC complaint. At this early stage of the litigation, that is sufficient to establish causation. *See Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490, 500 (E.D. Pa. 2012) (denying summary judgment on retaliation claim where plaintiff was terminated about one month after informing employer of intent to file a charge with the EEOC and 15 days after she filed the charge).

### E.      Plaintiff May Proceed under 42 U.S.C. § 1983

In her Amended Complaint, Plaintiff includes one count under 42 U.S.C. §§ 1981 and 1983, which Plaintiff uses as an additional vehicle to bring her employment discrimination claims. Section 1981(a) states in relevant part that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens….

The statute further states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Section 1983, in turn, states that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

"[W]hile § 1981 creates *rights*, § 1983 provides the *remedy* to enforce those rights against state actors." *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (emphasis in original); *see also Bradley v. Pittsburgh Bd. Of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990) ("[S]ection 1983 is a vehicle for vindicating rights secured by the United States Constitution or federal law and does not confer any substantive rights.").

Because Defendant is a state actor, "[d]iscrimination claims [against it] may be brought under either [Title VII or § 1983] or both." *Bradley*, 913 F.2d at 1079; *Benard v. Washington Cnty.*, 465 F. Supp. 2d 461, 472 (W.D. Pa. 2006). "When used as parallel bases for relief or companion remedies, Title VII and 42 U.S.C. §§ 1981 and 1983 require the same elements for their causes of action and courts incorporate the same standards when assessing [] employment discrimination claims." *Behrens v. Rutgers Univ.*, No. 94-358, 1996 WL 570989, at *4 (D.N.J. Mar. 29, 2016) (citing *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980); *Boutros v. Canton Reg. Transit Auth.*, 997 F.2d 198, 202 (6th Cir. 1993)); *see also Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 172 n.4 (3d Cir. 2014) ("The substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII."); *Devine v. Pittsburgh Bd. of Educ.*, No. 13-220, 2013 WL 4648393, at *5 (W.D. Pa. Aug. 29, 2013) ("Race discrimination claims under § 1983 and Title VII are typically analyzed together.").

Plaintiff's § 1983 claim will be permitted to proceed to the same extent as her Title VII claims.[1]

---

[1] As part of her § 1983 claim, Plaintiff alleges that she has been "denied the right to the same terms, conditions, privileges and benefits of her employment as non-minority employees, in violation of 42 U.S.C. § 1981." (Am. Compl. ¶ 80.) As Defendant seems to point out, this allegation reads like an equal protection claim, for which Plaintiff would need to allege that she received different treatment from that received by other individuals similarly situated "and the

**F.      Plaintiff May Not Proceed on a Common Law Theory of Wrongful Discharge**

Plaintiff alleges that she was wrongfully discharged from her employment, in violation of

public policy.  Plaintiff brings this claim under Pennsylvania state law.  "Generally, an employer

may terminate an at-will employee for any reason, with or without cause."  *Tanay v. Encore*

*Healthcare, LLC*, 810 F. Supp. 2d 734, 737 (E.D. Pa. 2011) (citing *Shick v. Shirey*, 716 A.2d

1231, 1233 (Pa. 2000)).  "An exception to this rule exists where the termination violates public

policy," *id*. (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa.

2000)), but the exception "is not to be liberally construed."  *Reyes v. Termac Corp.*, No. 11-

5124, 2012 WL 3517372, at *2 (E.D. Pa. Aug. 15, 2012) (citing *McLaughlin*, 750 A.2d at 287).

"To state a cause of action under the public policy exception to the at-will employment doctrine,

a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an

administrative regulation, or a judicial decision.'"  *Tanay*, 810 F. Supp. 2d at 737 (quoting

*Hunger v. Grand Central Sanitation*, 670 A.2d 173, 175 (Pa. Super. Ct. 1996)).

The Third Circuit has held that "Pennsylvania law does not recognize a common law

cause of action for violating public policy if a statutory remedy exists."  *Gillispie v.*

*RegionalCare Hosp. Partners Inc*, 892 F.3d 585, 597 (3d Cir. 2018) (citing *Wolk v. Saks Fifth*

*Ave., Inc.*, 728 F.2d 221, 224 n.3 (3d Cir. 1984)).  In Pennsylvania, "the exclusive remedy for

discriminatory termination is under the PHRA."  *Brown v. St. Luke's Hosp.*, 816 F. Supp. 342,

344 (E.D. Pa. 1993).  Accordingly, "Plaintiff's claims of discrimination cannot be heard as

---

different treatment was improperly motivated by discrimination or punishment for exercising a
constitutional right."  *Zappan v. Pennsylvania Bd. of Probation & Parole*, 152 F. App'x 211, 219
(3d Cir. 2005). Because Plaintiff does not specifically allege an equal protection claim, nor does
she plead any facts in support of such a claim, we will assume that she does not intend to proceed
on this theory.  However, since we are affording Plaintiff the opportunity to amend her
pleadings, she may include an equal protection claim in the next iteration of her complaint, if she
so chooses.

claims of wrongful termination through the public policy exception."  *Id*.; *see also Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 943 (3d Cir. 2007) ("The Supreme Court of Pennsylvania has held that, because a PHRA claim is available in discrimination cases, a wrongful discharge claim will not lie.") (citing *Clay v. Advanced Computer Applications*, 559 A.2d 917, 921 (1989)); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437 (3d Cir. 1986) ("Employer actions that discriminate on the basis of age violate public policy, but the PHRA provides the exclusive remedy for this undesirable conduct."); *Titus v. Home Depot*, No. 08-2757, 2008 WL 4191685, at *4 (E.D. Pa. Sept. 10, 2008); *Nix v. Nationwide Ins. Co.*, No. 05-503, 2005 WL 783345, at *2 (E.D. Pa. Apr. 7, 2005) (collecting cases).

Plaintiff acknowledges that the PHRA "prohibits employment discrimination based on race and gender."  (Am. Compl. ¶ 93.)  Indeed, one of her counts is brought pursuant to the PHRA.  Since there is a statutory remedy under which Plaintiff may seek redress for alleged wrongful termination, her common law wrongful discharge claim must be dismissed.

### G.    Plaintiff's PHRA and PFPO Claims May Proceed

Claims "brought pursuant to Title VII and the PHRA are generally analyzed under the same standards."  *Burton v. Pennsylvania State Police*, 990 F. Supp. 2d 478, 500 n.30 (E.D. Pa. 2014) (citing *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008)), *aff'd*, 612 F. App'x 124 (3d Cir. 2015); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts."); *Dykes v. Marco Grp., Inc.*, 222 F. Supp. 3d 418, 424 (E.D. Pa. 2016) ("We apply the same standard when analyzing discrimination claims brought pursuant to Title VII, the PHRA and Section 1981.").

PFPO claims are also "analyzed under the same framework." *Johnson v. Philadelphia Police Dep't*, No. 14-1036, 2015 WL 12914147, at *2 n.1 (E.D. Pa. July 20, 2015), *aff'd*, 657 F. App'x 83 (Mem.) (3d Cir. 2015); *see also Ives v. NHS Human Servs., Inc.*, No. 15-5317, 2016 WL 4039644, at *2 n.1 (E.D. Pa. July 28, 2016) ("Title VII, the PHRA, and the PFPO are so similar that employment discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well."); *Joseph v. Continental Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) ("Because Title VII, § 1981, and PFPO address similar substantive issues, and because claims under those statutes are analyzed in the same manner, we will limit our discussion to Title VII issues.  Our discussion and analysis of these issues applies with equal force to Plaintiff's § 1981 and PFPO claims." (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999); *Hong v. Temple Univ.*, No. 98-4899, 2000 WL 694764, at *9 (E.D. Pa. May 30, 2000))).

Defendant provides no reason, and we are aware of none, why Plaintiff's PHRA and PFPO claims should be analyzed any differently than her Title VII claims.  Accordingly, Plaintiff's PHRA and PFPO claims will be permitted to proceed to the same extent as her Title VII claims.[2]

---

[2] We recognize that Plaintiff has included some passing references to alleged gender discrimination in her Amended Complaint.  The Amended Complaint also suggests that Plaintiff believes she was retaliated against for reporting certain wasteful spending to her superiors. Based on the current pleadings, the crux of Plaintiff's case is race discrimination and Plaintiff will not be permitted to bootstrap ambiguous claims relating to gender discrimination and wasteful spending to her race discrimination claims.  If Plaintiff wishes to pursue claims relating to these issues, she must clearly articulate those claims and the requisite elements of those claims in an amended pleading.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint will be granted in part and denied in part.  Count II, alleging a hostile work environment, will be dismissed without prejudice.  Defendant's Motion will be denied in all other respects.  Plaintiff will be given the opportunity to amend her complaint.

An appropriate order follows.


**BY THE COURT:**


**/s/ R. Barclay Surrick**
**R. BARCLAY SURRICK, J.**